We have a busy morning today. We have four arguments, four cases that are scheduled for argument. And one case that's been scheduled for on the briefs, and that case we've reviewed. The first case this morning is Unwired Planet, LLC v. Google Inc. And this is case 18-12. Mr. Jay, now I understand you reserved four minutes for rebuttal time, is that correct? That's correct, Your Honor. Okay, you may proceed. Although, perhaps I have this wrong. You called the 18-12, not the two combined docket number cases. I called 18-10, that's what we have up on the docket first. That's right, Your Honor. I'm sorry, I thought you had said 18-12. Okay. As this colloquy indicates, I'm here today in two cases, between Unwired Planet and Google. And while there is one overlapping issue, eligibility for covered business method review, I'd like to begin this argument with the issue that's unique to this case, which is the obviousness issue. And if we decide against you on the obviousness, we don't have to get to the CBM in this case, is that right? I wouldn't agree with that, Your Honor, because of the possibility of further review in the IPR decision. We'd urge the court to decide them both, in particular, if you just decide the IPR. We think that the CBM issue, for one thing, is significant. For another, overlaps substantially with what you'll need to decide in the second case. We don't have to. I know you want us to, but it resolves the case if we rule against you on obviousness. That's right, Your Honor. A final decision in the IPR would resolve the case. So since you're arguing both cases, let me ask you for this argument. Are you going to also argue the CBM issue? Absolutely. Why don't you start with that one? Because I do have a preliminary question. And what's our standard of review? What are we reviewing here? Regulation, regulation language, or statutory text? You are reviewing the interpretation of statutory text by the board. And that's important. Both halves of that are important. One, it is statutory text and not regulatory language, because the regulation just parrots the statute. And under Gonzales v. Oregon — What's the standard for reviewing statutory text? It's de novo, Your Honor. And it's de novo here for several reasons. One is that what you're being asked to review under the APA is whether the agency has acted in excess of its jurisdiction. It's a pure matter of statutory interpretation. I'm a little confused. Are you asking us to de novo review the application of the CBM statute to the facts of this case? We're first asking you to review what is the standard for CBM review. Well, haven't we already decided that? I mean, in Versada, we made it very clear that CBM isn't confined to financial industries per se, but goes beyond that to a broader definition, as the board has said in its notice and comment rulemaking. I mean, that's pretty clear from Versada that we've already decided that it has an expansive scope, haven't we? Well, Your Honor decided Versada based on the plain statutory language. I mean, the court was expressive about that, that it was deciding it not based on a gloss put on it by the board. It acknowledged that it does have an expansive scope not limited to banks and brokerages. Well, I don't think that that's necessarily true. We relied very heavily in Versada on the board's comments during the notice and comment process in the rulemaking about this. So it's not – we didn't pluck the statutory language out of context. We looked at how the board looked at it, at the legislative history and the likes. We've already determined as a matter of law that it reaches beyond mere financial industry. Well, two responses to that, Judge Hughes. One, if I may, it's not the board's interpretation. It's the director's interpretation during the rulemaking. And that's significant because the board itself has no entitlement to deference. And the second point – Well, the director's interpretation is not in the form of a regulation because the regulation simply copied the exact language of the statute. The so-called director's interpretation turns out to be lawyers' argument. It is – it's a negative – We don't give deference to lawyers' argument, do we? You don't, Your Honor. It's a negative – it is a negative decision. It was a decision not to promulgate rules. The authority given the director in the statute – How would you have us define CBM then? I'm sorry, Your Honor. I mean, I understand this. There's no deference here on the statutory interpretation, but we've already made that call in Versada. So aren't we just applying Versada's definition of CBM to this case? Well, if I take Versada's definition – Let me take it a step further. Aren't we just reviewing the board's application of Versada to this case? I don't think so, Your Honor. Your Honor, for one thing, the court in Versada did not bless the expansive, you know, what in that case was dicta by the board, but in this case is absolutely essential to the CBM determination. The idea that incidentally – What's essential, that we bless the board's broader interpretation? I'm sorry. I'm asking the court not to bless the board's interpretation. It's very important that the court understand that Versada has not agreed that the board is interpreting the statute correctly in all respects, and in particular the court of Versada has not upheld the application of the so-called incidental standard, incidental to a financial product or service, a definition which reads out two of the key elements of the statute. It reads out used in, and it reads out practice, administration, or management, something that is incidental to a financial product or service, but is not used in the practice, administration, or management. Where in the statute is the word incidental? It's not in the statute at all, Your Honor. That's why we think it's completely over-reversed. So it's not before us? Oh, no, Your Honor. My friends on the other side and the board have relied 100% on the concept of incidental for their interpretation. Where did they get that from? Is that in Versada? No, Your Honor. It is not in the statute at all. But that came up during the comment period. Did it not? Yes. But I don't think that even if the director had put that in a regulation, which she did not, there still would be a question as to whether that's a correct interpretation of the statute. That's right. We don't think that it could be squared with the statute. As of now, there's not even a regulation to cause us to bother to do that. That's correct, Your Honor. There is nothing in the statute that says incidental, and my friends on the other side have not offered, nor did the board offer, any interpretation under the statutory text using the words used in practice, that would sustain CBM eligibility in this case. I'm sure we'll hear from them on that issue in due course. Indeed, Your Honor. So in this case, what is it about the methods that are not covered business methods? So this case that we're talking about right now involves the 205 patent. The 205 patent is a method of prioritizing results from a search. And it's not a covered business method because this is something, first of all, that's not used by people who provide financial products or services at all. It's used by the network administrator. And second of all, it is not used to practice, administer, or manage any financial product or service. At most, it might be used by a wireless user who wants to find the nearest pizza  The ATM is a purely exemplary embodiment, and the board itself, and this gets back to Judge Hughes' question about the standard of review. In addition to the de novo point that we've made, we've also made an arbitrary and capricious point. Now, something contrary to law is always arbitrary and capricious, but in particular here, the board, in another decision, ServiceNow, has expressly said that an ATM, as an illustrative embodiment, is not good enough to qualify for covered business review. And in this case, they did the exact opposite. That is the very definition of arbitrary and capricious decision making. So in that view, whatever your definition of CBM is, their actions here are arbitrary and capricious. That's correct, Your Honor. Now, we think that the court should clarify that the incidental, the use of incidental as the standard in place of the statutory language is wrong, but even if it were right, we would still win for the reason that we just discussed. Why does it matter whether we decide this case under IPR or under CBM? Well, I have to say candidly, Your Honor, in order to keep the patent, my client needs to win them both. So we need to prevail in the IPR and also in the CBM. But we think in the CBM, you can decide it purely on the eligibility question because the board had no business reaching the merits of the CBM. We don't think the court needs to reach it either, and the other side can go and litigate that. So is your argument that the board had no jurisdiction? The board in the CBM had no jurisdiction. So that question would proceed first. Well, the board had jurisdiction over the IPR. Yes, the board did have jurisdiction over the IPR. So, again, if we just look at the IPR, we agree with them that these claims are obvious and the patent is invalid. We don't have to reach these more difficult questions about the CBM in this case. I know your next one is head on. Right. The CBM becomes moot if we find that the patent is obvious and therefore invalid, right? That's correct. As Judge Hughes just said, you'll still have to decide essentially the same issue in the other case. Why don't we go to that issue if the presiding judges agree? To the obviousness issue. I'd be happy to, Your Honor. The key limitation in the patent is the farther-over-near ordering limitation. That appears nowhere in the prior art. In order to get it out of the prior art, the board said, first of all, that it is disclosed in Galetz. That's wrong. It also said that it is disclosed by other references that disclose listing things in alphabetical order. That also isn't correct because it doesn't satisfy the standard for accuracy. Can we just clarify for me one thing? This patent doesn't mandate that every single item be displayed farther-over-near, right? It's just proximity independent. It's proximity independent, Your Honor, so returning a sequence of 2, 1, 3, 4, 5, 6, 7. So this patent claims proximity independent ordering, not near-over-farther ordering. It does not claim near-over-farther ordering. That's right. It claims returning the pair of results farther-over-near. Why is an alphabetized list proximity independent ordering? The alphabetized list is proximity independent, Your Honor, but that's not all that the patent claims because the patent requires not just that the criteria be independent of proximity, but that the method only applies when it calls for returning farther-over-near. Let me illustrate that with an example. If McDonald's has paid for priority over Burger King and McDonald's would be the closest result anyway, the method has no application. It only applies when McDonald's needs to be bumped up in the list over Burger King so that McDonald's, although farther away, is returned first. That's the farther-over-near ordering. That doesn't appear anywhere in the prior art. The board purported to get that out of the prior art by turning primarily to the Galitz reference, and the Galitz reference is a treatise on screen design. We think that that's not apposite in any event, but I would urge the court to look in particular at the passage on A1053 that the board said teaches prioritizing address information. It does no such thing. Galitz, though, teaches prioritizing results for display to users. It teaches a number of ways of prioritizing, not search results, Your Honor, but menu items for display to users. The board said that Galitz is about search results, but it's not. But it does teach a number of ways, and in that— But it would teach how to prioritize search results. I think that that assumes the premise of Google's argument, Your Honor, to say that it would teach how to prioritize search results because, after all, these are—it's a treatise on how to design menus, menus that it says should remain static to build familiarity, and I don't think that that's what you'd look to for a treatise on how to order search results. But in Galitz, you order how you want the priority or the results to be prioritized. Well, Galitz says that you should look first to the natural ordering. So assuming that Galitz is applicable art, it says you should look first to natural ordering, and it gives a number of other options. And then fifth, you know, fifth in a string is kind of a last resort for small lists. It says use alphabetical order if no frequency or sequence pattern is obvious. And it's our submission that, given that Brohoff, for example, teaches nearer over farther, that a skilled artisan would not look to Galitz and say, I'm instead going to use— Why would a skilled artisan have to even look at Galitz? This is something that's been—has created a question for me. And that's—it seems to me that under KSR, when you're looking at a practical result or a practical activity, prioritizing results in alphabetical order or nearer to farther or farther to nearer is just—that's practical. It just seems that a person skilled in the art would look at this and say, gee, I can— maybe I should put these in alphabetical order, or maybe I should put them farther to nearer. Well, that's—first of all, Your Honor, that's not what the Board said. And there's no substantial evidence in the record to say from which the Board could have concluded that anyone was using farther over nearer. It's not in the art at all. After all, in an IPR, an obviousness argument has to be based on printed publications. And the only printed publications here are Brohoff, which expressly teaches, for this combination, which expressly teaches prioritizing nearer over farther. And Galitz, which we think both is inapposite, does not teach farther over nearer under any reading. And we don't think that its alphabetizing teaching would apply either. You don't think KSR entitles us to use common sense when we read these, do you? Well, Your Honor, common sense, I think, suggests that in this case, a skilled artisan in the field of location-based services would have done exactly what Brohoff and Remy both taught, which is to return nearer results before farther away results. And the innovation here is to combine payment for placement and farther over nearer. I don't think that common sense tells you that that was already obvious in the art. And that's certainly not what the Board said. The Board purported to get it out of Galitz, and it simply is not there. I see you're done for my time. Thank you. Mr. Wright. Thank you, Your Honor, and may it please the Court. Substantial evidence supports the Board's determination that in the IPR proceeding, or its final determination in the IPR proceeding, that the challenge claims are obvious over the prior art. And that's all this Court needs to determine to resolve the appeal on the 205 patent. And because it's case dispositive, I'd like to start with that. Our standard of review is clearly simply the standard of substantial evidence in the record to support their decision. That's correct, Your Honor. So the only claim feature upon which UP attempts to distinguish the prior art here is the so-called farther first ordering, or farther over nearer ordering. But when Brohoff and Galitz are combined, that is the precise result that you get. And allow me to explain. There's no dispute that Brohoff discloses a geographical database that provides service provider information upon the request of a subscriber. And the only thing that UP argues is allegedly missing from Brohoff is this farther over nearer ordering. So Brohoff, however, has a gap. It uses geographic zones to order the service provider lists. But the gap in Brohoff is where you have multiple service providers within a single geographic zone. And if you turn to A1590, which is Brohoff's Figure 5, you'll see that in Zone C, which is the very outside zone, you have both a BP station and a 76 station. And Brohoff leaves it open to either the skilled artisan or the network administrator for how to order multiple service providers within a single geographic zone. So if you turn to Galitz, which is directed to... Galitz recognized that in the future, operating systems were going to be on much smaller devices that could be in a purse or in a wallet. And it talks about ordering menus when you have a small screen density. And it suggests that for small lists, which is what you actually have in Brohoff, that you use alphabetical ordering. It's a much faster and easier way to do it. And when you apply that ordering to the situation in Brohoff in Figure 5, you have the OK station, which is in the first zone, the Q8 station, which is in the second zone. And then in the third zone, you have to decide whether to order the 76 station first or the BP station first. And if you turn to Galitz, to the extent that you even need to turn to Galitz, you order it alphabetically and the 76 station comes first. And in the diagram, the 76 station is further away from the BP station. So when you actually combine the references, you get the claimed result. Doesn't Zerko cast an unfair thumb on the decisional process? That is, if all the PTAB needs is substantial evidence in the record on a question of obviousness, that we have to uphold if there's substantial evidence. Isn't that somewhat unfair to the other side in that kind of a case? Well, setting aside the fairness, Your Honor, that is the standard. But it's not unfair in any event, especially with respect to appellate review. It's not this court's job to look at these facts de novo and what references teach is a question of fact. Whether two references are combinable is a question of fact. Whether the reference is analogous art is a question of fact. And on appeal, it would be wasteful for this court every time to look at these things anew. So it's not an unfair standard at all, it's the correct standard. So I think the confusion in the IPR here lies because what UPISA is saying is that the wearing clause sets up a necessary result. That's the position UP has to take to save its patent in the inter partes review. So even though the board rejected that construction, and that construction sets up an internal inconsistency in the claim, and that construction finds no support in the specification, even if you accept that construction, that still does not impart this ordering of two service providers, still does not impart patentability to claim one. And in fact, when UP turns to find written description support for this element, it has to recognize that this is purely a result, as the board recognized. The wearing clause is purely a claimed result. And when you use proximity independent based ordering, which the claim also requires, one result is that the farther service provider can be ordered and will be ordered ahead of the nearest service provider, at least in an even number of the cases. Their case has to be that farther over nearer is absolutely required in every instance. Is that correct? To win in the IPR. To win in the IPR. It does. That's true. But again, that sets up this internal inconsistency in the claim. Why do you use proximity independent? I understand your point. I just wanted to be sure that I had it straight. So again, with respect to the inter partes review, substantial evidence supports the board's determination that the challenge claims are obvious. I'm happy to answer any other questions that the panel might have in that regard. Do you want to address the CBM issue? We can start addressing that, certainly.  The advantage of the CBM issue, if it's actually a CBM, is that that opens up the 112 issue, right? It does open up the 112 issue. It's not otherwise open under the IPR. It's not open, but I think there is still an issue with respect to UP's argument in the IPR that this wearing clause is a necessary requirement. I think UP suggested it's a conditional step, that somehow the method is only performed when you have this pay for play situation. But again, that's in the yard. That's in Hopkins, and that's in Rich. So to the extent that we address that construction, I still think the construction that's at play in the IPR. The only support that UP has for the farther over nearer limitation in the specification is that one line that talks about prioritizing with the preferences of a service. That's not the 112 issue. It's not, but their argument, it's not really a claim construction argument. The construction that the board used is correct in view of the only support that's in the specification. I still think it impacts, to the extent that there is even a claim construction issue here, I think it impacts that. But you can still reach that and understand that argument without addressing the covered business method appeal for the 205 patent. With respect to the covered business method patent and the standard of review, the Congress unambiguously delegated to the agency the responsibility for implementing this transitional program for covered business method patents. I think we have a different case with respect to this particular issue. If the agency had adopted a regulation that was different from the statutory text, but in this case it adopted almost verbatim the statutory text. Even if we refer to the regulatory language, aren't we really interpreting the statute here? I think no, and here's why. UP has repeatedly characterized this as a case of the patent office merely parroting the statute. Although it didn't need to, because CBM eligibility is a procedural rule, the patent office nonetheless went through the full notice and comment rulemaking for establishing the regulations related to CBM review. In doing so, it received numerous comments from the bar and from law firms and from corporations, etc., saying, oh, you should narrow the scope of the definition, or you should broaden the scope of the definition, or whatever it was. All of that becomes relatively irrelevant in light of A, the statute, and B, this court's decision in Versailles. The commentary has to do with why don't you adopt a regulation. They never did. The regulation they adopted was verbatim the statute, so they have no standing to claim any benefit from their regulation. It's simply a printed version of the statute. So the regulation is irrelevant. I think arguably they get some benefit, because they went through notice and comment. Are you trying to suggest that the comments in the Federal Register, apart from the regulation, get some kind of deference? No. No, I'm not suggesting that. Then you're not going to get very far, because the regulation itself doesn't do anything but repeat the statute. I mean, it seems to me that what you should be arguing is that we've already referred to and incorporated those comments, not just in Versailles, but in Blue Calypso and also in Citesound, when we've looked at this and said, financial activity is not confined to financial institutions. Particularly in Blue Calypso, we specifically cite that register language you're talking about in noting our definition. Right. So implicitly at least in both, actually in all three of the cases, Versailles, Citesound, and Blue Calypso, that specific language of the office was incorporated into those decisions. It doesn't have to be a matter of deference, although we did say in Versailles that they should get substantial deference. But it's a matter of statutory construction, and we can look at the various ways they've treated the legislative history in arriving at that statutory construction, can't we? Right, but I think what Citesound and Blue Calypso established, and it's consistent with the substantial deference language that the agency has accorded in Versailles, is that the correct standard of review for looking at an agency decision in determining whether a patent is CBM eligible, which is really the core of the agency's authority that Congress delegated to it, is you look at those decisions under Section 706 of the APA and use an arbitrary And whether they're arbitrary and capricious, yeah. And arbitrary and capricious. Whether the director is properly exercising her discretion to institute a CBM review, we've said repeatedly is subject to arbitrary and capricious review. Right. Right, and that's the standard that the court should use here in determining But that standard is for the institution. The grounds, the basis for the institution. That's not the standard, and I don't think Versailles says that interpreting the statutory text is subject to something other than a de novo review. Let me also clarify something which constantly gets thrown back, and I think it's a misunderstanding. Versailles says, Furthermore, the expertise of the USPTO entitles the agency to substantial deference in how it defines its mission. Congress recognized this by its broad delegation of rulemaking authority in the establishment and implementation of the transitional post-grant review proceeding. It might have been helpful if the agency had used that authority to elaborate on its understanding of the definition provided in this statute. That's what Versailles said. Versailles never even implied that the statute was somehow subject to the expertise of the USPTO because that's not what statutes do, not at least since Madison v. Marbury. That quote, unfortunately, is lifted out of context, not only by lawyers, but occasionally by us, but it's incorrect. We have, in Versailles, we were very clear that it's a statute that we're interpreting. So, yes, the statute is what is being interpreted. Let's look at the language of the statute, Campbell. The statute says, For purposes of this section, the term covered business method patent means a patent that claims a method of corresponding apparatus for performing data processing or other operations used in the practice, administration, or management of a financial product or service, meaning a financial product or a financial service. You're not suggesting that what's involved in this patent is a financial product, that this is a patent for a financial product or a financial service, are you? Well, this, and I assume here we're still talking about the 205 patent. We haven't turned to the patent in the next one. We're going to have the same issue when we get to that one, but since we're into this one, we can talk about it here. So this court, I think, resolved in sight sound that the exchange of a good or a service for money qualifies as a financial activity. That's if the claim method is for an exchange of financial services or an exchange of money. But what is it about these claims that there's a claim for a method of performing something related to a financial service? Finding the proximity of a location of businesses or a bathroom, a roadside service area, somebody to, that's not, is that claiming a method for performing a financial service? Well, what the board did is the board looked at the service provider here and determined that that's, according to the specification, determined that the service provider is really a proxy for a business, a business entity. Well, that would make every service provider a proxy for business, and everything is a CBM. Well, let me give you a hypothetical. Let's assume I invent a stent. You know what a stent is? I do. Okay. Let's assume I invent a stent that has a balloon device in it with a cage, and it's a new invention, and I work on that, and I get a patent on it, and I'm going to sell that invention and get money. Is that a financial service or a financial product? Well, I think the inquiry there begins with the claim, right? With the invention. It begins with the invention. What is the invention? Well, the invention here, I think the 205 patent and the patent that we'll be discussing next fall squarely within the type of patent that Congress was concerned about when it implemented this transitional program. They were concerned about finding the proximity of an ATM as a financial product or financial service and carved out a whole new set of methods for CBM? Really? No. The type of patent that Congress was concerned about were patents that arose post-State Street Bank, which was in 1998, and pre-Bilski, which was in 2010, that are no longer valid, directed to patentable subject matter. They were concerned about all those business method patents that somehow suddenly appeared. Thousands of business method patents attempting to patent everything that everybody did. Right. That's what they were concerned about, right? They weren't concerned about your patent, were they? Well, with this particular patent, let's just turn back to the example that UP used, an example that would infringe the patent. That's a pay-for-play system where Burger King wants to be prioritized ahead of McDonald's when you search for two fast food restaurants. Certainly, there are business methods that are out there, and that's the nature of the underlying enforcement. I just have one thing. I get that. If that's the way the board had characterized this, you might have a better argument. The problem is the board has this incredibly arbitrary definition that anything incidental to a bank whatsoever is financial. That could include a patent on a light bulb to put in the lobby. If this had been a patent for a business method to prioritize ordering in exchange for purchase of this business method, you might have a better CBM argument, but here you don't. Well, I think that's where the incidental to or complementary to language comes into play. Where's the term incidental in the statute? It's not in the statute. Well, that argument's not going to go very far. Now, you're out of time, and we let you go over time. But we're well into the next patent. Yes, we're into the next patent, but you'll get another shot at it, and I'll give everybody enough time. So let's go back and hear from Mr. Jay, and I'll restore your full four minutes of time. Thank you very much, Your Honor. I appreciate it. Is your argument about the definition of CBM about this incidental language? That's part of it. Because, I mean, you can get there two ways. I mean, if by incidental, the board is really saying anything at all related to a bank, including the light bulb in the lobby, that's clearly arbitrary and capricious. We don't have to delve into this line drawing of what is or isn't a CBM patent, where we've already set out broad principles of that. But if your argument is that somehow the board has gone beyond the statutory definition because it's gone beyond financial institutions, haven't we already rejected that? I want to make absolutely clear, Judge Hughes, we are not arguing for a banks and brokerages definition. We are not arguing for a financial institutions definition. Let me ask you this. I was asking your friend this and telling him what his better argument would have been, is if the patent said, here's a method for optimizing search results for your company by allowing you to pay for priority. And so it's a business method. Look, you pay us $10,000, we'll put you at the top of the list. Or you pay us a lot more than that, I suspect, at Google. That seems to me to be a business method, no? A business method, but the question is, does it involve the practice, administration, or management of a financial product or service? Now, I don't think you have to agree with me for me to win this case, but I'm going to say no, it's not. Because that equates a financial product or service with a product or service that someone would pay money for. That's an awful lot of things. It's not consistent with the legislative history. But it seems to me very indistinguishable from the pricing algorithms that issue in Versado. It was the same kind of thing. It wasn't involving anything financial, but it was, here, we'll offer you this. This will offer you a way to optimize prices. This is, we'll offer you this. It's a way to optimize revenue streams. I'm not sure that that's right, Your Honor, because I think you're right that a pricing algorithm, and likewise an electronic credit card transaction algorithm like Insightsound, that has to do with the transaction itself. And the office, in its guidance, has actually said something along the lines of a way of doing a transaction. That might be a covered business method. But having a product that you sell is not a financial product or service. That deprives me. No, no, I get that. Maybe we're not on the same page about the example. I mean, it's not people just going out and selling the pricing algorithm. It's the algorithm itself. But if this is an algorithm that allows businesses to purchase higher access on a search to get more revenue, that seems to me to be a business method. I think that it might well be. Well, in that case, it would be, because what you're actually claiming is you're claiming a method. You're claiming the method of the pricing itself. Right. Or in Judge Hughes' example, you're claiming a method to pay for priority. And that's in your claims. And in neither this case nor the next case do you have anything like that. But a method for making money, as long as it doesn't involve printing, a method for making money surely cannot be a CBM by definition, can it? Absolutely not. I think that the legislative history, to the extent that it sheds any light, it says exactly that, that Senator Leahy and Senator Kyle both pointed out that this was not for the entire universe. This is a very powerful tool, the covered business method review. It has fewer limitations than PGR. I don't understand your answer to that, because isn't the pricing algorithm in Versada a method to maximize revenue, which is another way of saying a method to make money? I took Judge Plager's question to be a method of making money, meaning that you have something valuable and you sell it. Not a method. Sure. I mean, that's it. Obviously. Not a method of optimizing. But that's not a method. I mean, if you invent a product and you sell it, that's not a method. But this is invented, and all we have here is a service that the other side is hypothesizing might one day be sold. That, of course, is not even in the claims. If I could, I'd like to take 30 seconds just to go back to the obviousness issue, because it is so important. Judge Plager, I think, brought out the standard of review, and while we're not arguing with the standard of review, I think that with the standard of review comes the important point that the board can only be sustained on the reasoning that the board itself used, and it cannot be sustained based on findings that the board did not make. And in this case, my friends are asking you to do exactly that. If you look at A16, you will see not that this alphabetical order principle is key. It says that farther over nearer is in the prior art. And so my friends saying that farther over nearer was not the critical limitation, that's not what the board said. They said it's in the prior art, and they cited a page of Galitz 1053 that you will see does not, in fact, teach prioritizing address information in that way. It just says put the address before the city, the city before the state, and the state before the zip code. That is not the same thing as prioritizing nearer over farther, farther over nearer, or anything like it. Do you need to sit down, or? I'm happy to stand right here if you want to call the next one. Let's go into the next case, which is 1812. And this case turns entirely on the question.